HONORABLE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONNELL LINTON,

        Plaintiff,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a AMTRAK,

        Defendant.

Case No.  3:18-cv-05564-RJB

PLAINTIFF'S MOTION TO EXCLUDE
SURVEILLANCE PHOTOGRAPHS, TAPES
AND TESTIMONY AND FOR DISCOVERY
SANCTIONS

## I.  <u>RELIEF REQUESTED</u>

Plaintiff Donnell Linton asks this Court to exclude for any purpose at trial surveillance and videos which were produced to plaintiff for the first time on January 30, 2020, one business day before the scheduled February 3rd trial.  Plaintiff also requests sanctions for violation of the discovery rules in failing to identify or produce the existence of the surveillance or the person(s) such in response to the lay down requirements of FRCP 26 and plaintiff's express discovery requests to produce surveillance material.

Plaintiff expressly requested identification and production of surveillance materials in November 2018.  In addition, the laydown requirements, Rule 26(a)(1)(B), apply to surveillance.

Nevertheless, in July 2019, Amtrak responded to plaintiff's discovery with a work-product

PLAINTIFF'S MOTION TO EXCLUDE SURVEILLANCE
PHOTOGRAPHS, TAPES AND TESTIMONY AND FOR
DISCOVERY SANCTIONS - 1
Case No. 3:18-cv-05564-BHS

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

objection, though it provided no privilege log.  Further, it stated that it had no responsive material.

Amtrak subsequently conducted surveillance before plaintiff's August 22, 2019 deposition.[1]  Although Amtrak conducted surveillance and completed the deposition, it failed to supplement and correct its responses for over five months.  During the remainder of discovery and beyond—the cutoff was December 9, 2019—Amtrak knowingly concealed the existence of requested surveillance.  Not until the close of business on Thursday, January 30, 2020, one business day before trial, did Amtrak finally supplement its response and end its knowing concealment of requested discovery materials.  It then listed these surveillance materials as trial exhibits.  It still refuses to identify who conducted the surveillance or the custodian of the videos.

This conduct is sanctionable.  Amtrak did not identify the surveillance, and then move for a protective order, nor did it even disclose the existence of the surveillance so that plaintiff could bring a motion to compel.  It should be the Court's role to decide whether Amtrak is entitled to work-product protection for any or all of the materials, before the ordered deadlines.  But Amtrak took the decision away from the Court and kept it in its own hands by concealing the existence of the surveillance.  "The attorney doubting that 'little voice' in his or her 'conscience that murmurs turn over all material information,' *Haeger v. Goodyear Tire and Rubber Co*, 906 F.Supp.2d 938 (D.Az. 2012), should submit it to the Court to decide its value pretrial. Defendants and defense counsel did neither."  *Salazar v. Monaco Enterprises, Inc*, 2015 WL 8773279, at *4 (E.D. Wash. Dec. 14, 2015).  Whether or not Amtrak's counsel experienced the "little voice" of conscience, they did not submit the issue to the Court.

As the Western District and many other district courts have held, surveillance tapes are

---

[1] Plaintiff does not assume that Amtrak has disclosed all of it surveillance activity and material, and that Amtrak has not conducted surveillance at other times not yet disclosed or not doctored.  Amtrak has only produced surveillance material that it intends to use at trial.

PLAINTIFF'S MOTION TO EXCLUDE SURVEILLANCE
PHOTOGRAPHS, TAPES AND TESTIMONY AND FOR
DISCOVERY SANCTIONS - 2
Case No. 3:18-cv-05564-BHS

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

substantive evidence, even if a party purports to want to use the tapes only for impeachment purposes. None of the cases cited in Amtrak's discovery response rationalizing its discovery violations allow a defendant to wait until the last minute, weeks after the discovery deadline and pretrial conference, before it discloses surveillance tapes with the intention to use them at trial.

Even the cases most favorable to Amtrak's position allow a defendant to delay disclosure of surveillance only until after the plaintiff's deposition. Plaintiff's deposition was August 22, 2019. Amtrak waited to disclose until January 30, 2020. This is an intentional, egregious and unjustifiable delay. Nor is it the first time Amtrak has waited until the eve of trial before disclosing surveillance. In the consolidated cases of *Harris v. Amtrak*, 2:18-00134, Amtrak responded for the first time that it had responsive surveillance material on Aaron Harris on August 27, 2019, only a week before trial began on September 3. Hoyal Dec. Ex. 5.

As many courts have noted, the surveillance tapes and associated witnesses must be disclosed and subject to discovery because "the camera may be an instrument of deception" and "can be misused," presenting a picture which "may be distorted, misleading and false." *Snead v. Am. Exp.-Isbrandtsen Lines, Inc.*, 59 F.R.D. 148, 150 (E.D. Pa. 1973) (leading case cited by Amtrak in its supplemental discovery response). Amtrak's unilateral actions in concealing the tapes until the eve of trial precludes any of this fundamental discovery allowing plaintiff to investigate all of the circumstances and authenticity, as the rules and court decisions allow.

Amtrak's justification of its tactics seems to amount to the following: Under the work-product privilege, it does not have to disclose the existence of any surveillance or tape, much less produce the tapes themselves, so long as it has subjective intent at the time that it may not to use the tapes at trial, notwithstanding laydown requirements or discovery requests. Nor is Amtrak required to supplement responses that deny the existence of surveillance material. It is not required

PLAINTIFF'S MOTION TO EXCLUDE SURVEILLANCE
PHOTOGRAPHS, TAPES AND TESTIMONY AND FOR
DISCOVERY SANCTIONS - 3
Case No. 3:18-cv-05564-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON 98104
(206) 467-6090

to identify those involved or move for a protective order if it believes discovery improper.  It is not required to disclose the existence of surveillance tapes or a privilege log so that plaintiff can move to compel, allowing the Court can decided the discovery issues.  But, when its subjective intent to use the surveillance material conveniently changes on the eve of trial, then Amtrak is entitled to spring the surveillance tapes for use as impeachment.

This argument to justify its misconduct and flouting of discovery rules is unsupported by any case law.  It requires  sanctions.  Further, it is clear that Amtrak will continue to violate the discovery rules with its concealment of surveillance tapes if the Court does not impose serious sanctions.  It will continue to respond to surveillance discovery as and when it likes.  Disclosing the surveillance tapes and adding them as a trial exhibit on the eve of trial disrupts plaintiff's trial preparation regardless of whether they come into evidence.  A continuance to do the discovery simply rewards Amtrak.  Amtrak wants a continuance; it asked for one in its recent discovery motion (although it failed to disclose this surveillance then either).  Dkt. 20.

Exclusion is required by the rules.  However, the only sanction that will punish and deter Amtrak is a hefty financial sanction.  Amtrak is a wealthy company and repeat offender on this issue.  Only a serious sanction will get its attention and change its conduct. Plaintiff suggests terms in the amount of $250,000.

## II.  <u>STATEMENT OF CASE</u>

Donnell Linton filed his Complaint July 17, 2018.  Dkt. 1.  By agreement and stipulated order entered by the Court, the discovery cutoff date was December 9, 2019.  Dkt. 31, Case #05366.

On November 26, 2018, plaintiff served his first set of interrogatories and requests to produce, requesting that Amtrak disclose and produce any surveillance material on Donnell

PLAINTIFF'S MOTION TO EXCLUDE SURVEILLANCE
PHOTOGRAPHS, TAPES AND TESTIMONY AND FOR
DISCOVERY SANCTIONS - 4
Case No. 3:18-cv-05564-BHS

Linton.  Hoyal Dec. Ex. 1 (Interrogatory No. 4; RFP 35).  On July 25, 2019, Amtrak responded by asserting work product; but it also asserted that it was unaware of any responsive materials.  Hoyal Dec. Ex. 2.  Although it asserted a boilerplate work product objection, it did not provide the required privilege log.

On August 17 and 21, 2019, Amtrak conducted surreptitious surveillance and took surveillance videos and photographs of Donnell Linton and his family and friends at various locations – through his windows, at high school, grocery shopping and going to medical appointments.  The surveillance, though extensive, was not disclosed until January 30, 2020. Hoyal Dec. Ex. 3.  It also surveilled his apartment for twelve hours on August 22, 2019, but did not observe him.  Hoyal Dec. ¶4.  Amtrak deposed Donnell Linton on August 22, 2019, the same day Amtrak had conducted its unsuccessful surveillance of his apartment.  Hoyal Dec. Ex. 4.

Amtrak did not supplement its discovery answers by identifying the surveillance it had undertaken and producing the product of its surveillance. It did not provide a privilege log required for the assertion of work product.  Rather, Amtrak concealed the fact of its surveillance and allowed the case to proceed through discovery on the basis of what was now a misrepresentation that it had no surveillance material.  It did not disclose its existence and move for a protective order to preclude their disclosure if it believed it had legitimate grounds for doing so.

Amtrak's deceptive actions precluded plaintiff from moving this court to compel production of the surveillance and depose those involved.  Plaintiff relied on Amtrak's discovery responses and disclosure obligations.  There was no reason to waste the Court's time or the parties' time to compel the production of surveillance material which did not exist.  Plaintiff was unaware that Amtrak was violating the very supplementation requirements that Amtrak had used to obtain a mistrial in *Harris*.

PLAINTIFF'S MOTION TO EXCLUDE SURVEILLANCE
PHOTOGRAPHS, TAPES AND TESTIMONY AND FOR
DISCOVERY SANCTIONS - 5
Case No. 3:18-cv-05564-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

1

2    The agreed court-ordered discovery deadline of December 9, 2019 came and went without

3    any admission on the part of Amtrak that it had conducted surveillance on Donnell Linton.  On

4    January 9, 2020, Amtrak first provided an exhibit list for trial; it contained no reference to

5    surveillance materials.  Nor was it included in amended exhibit lists produced January 27, 2020.

6    Hoyal Dec. ¶6.  The Court held its pretrial conference on Monday, January 13, 2020 without any

7    mention by Amtrak of the surveillance tapes. Dkt. 77, Case No. 05366.  The Court held a telephone

8    discovery conference on Thursday, January 23, 2020 on Amtrak's Emergency motion; Amtrak

9    sought late discovery but failed to reveal it was still withholding critical surveillance begun at least

     as early as August 2019.  Dkt. 22.

10       Instead, late in the afternoon of Thursday January 30, 2020, Amtrak finally supplemented

11   its July 25, 2019 discovery response.

12       Without waiving any objection, see attached surveillance videos and investigation
         reports.  These surveillance videos and investigation reports will be used for
13       impeachment and/or rebuttal based upon the evidence presented by plaintiff and his
         experts.  Amtrak further states that if it did not intend to introduce surveillance
14       evidence at trial, it would not have been required to produce the surveillance phots
         and films. *See, e.g., Snead v. American Experot-Isbrandsent Lines, Inc*., 59 F.R.D.
15       148 (E.D. Pa. 1973) (holding that the existence of surveillance films must be
         disclosed but films only need be exhibited to plaintiff if they will be used at trial);
16       *Fisher v. National R.R. Passenger Corp*., 152 F.R.D. 145, 158 (S.D. Ind. 1993)
         ("non-evidentiary films remain undiscoverable unless a substantial need for the
17       films is shown"; *Green v. Metro-North Railroad Company*, No. 3:04CV2174, 2006
         WL 8446191 at *2 (D. Conn. Sept. 19, 2006)("If the defendant represents that it
18       will not use surveillance material at trial, it need not produce the tapes because the
         plaintiff does not have a substantial need for them."); *Gibson v. National R.R.
19       Passenger Corp*., 170 F.R.D. 408, 410 (E.D. Pa. 1997) ("We also agree with
         Amtrak that, if it does not intend to introduce any surveillance evidence at trial, it
20       need not produce the putative photos and films during discovery.").

21   Hoyal Dec. Ex. 3.  In addition to the August surveillance, Amtrak disclosed January 2020

22   surveillance conducted long after the close of discovery and after the opportunity for plaintiff to

23   investigate and prepare.  Amtrak has since listed the videos and reports as a trial exhibit.  Hoyal

24

PLAINTIFF'S MOTION TO EXCLUDE SURVEILLANCE
PHOTOGRAPHS, TAPES AND TESTIMONY AND FOR
DISCOVERY SANCTIONS - 6
Case No. 3:18-cv-05564-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

Dec. ¶7.

## III.   LEGAL AUTHORITY AND ARGUMENT

**A.   Surveillance Amtrak's Late Disclosure Violated the Discovery Rules.**

1.   <u>Amtrak was Required to Produce Surveillance Materials Requested in Discovery</u>.

Plaintiff is entitled to discovery of relevant evidence under Rule 26(b)(1).  The surveillance material is relevant evidence subject to discovery on request.

The assertion in the supplemental response that the materials "will be used for impeachment and/or rebuttal" is not a basis for refusing a discovery request.   If a proper discovery request is made, "the discovery rules do not exempt from disclosure information to be used 'solely for impeachment.' *See* Fed. R. Civ. P. 26(b)(1) & advisory committee's note." *Derouin v. Kenneth L. Kellar Truck Line, Inc.*, 2010 WL 11684278, at *2 (W.D. Wash. Nov. 8, 2010).  "[E]ven if the video recording contained only impeachment evidence (which it did not), *a party must disclose impeachment evidence in response to a properly tailored discovery request*. Id*. (emphasis added) The Sixth Circuit has called  the argument that a party may withhold properly requested discovery material because the party withholding planned to use the material solely for impeachment as "so devoid of merit as to be specious" *Varga v. Rockwell Int'l Corp.*, 242 F.3d 693, 697 (6th Cir. 2001) (quoted by *Derouin*).   The Eastern District similarly has held:  "A party may not, under any circumstances, hold back materials responsive to a proper discovery request because it prefers to use the evidence as surprise impeachment evidence at trial." *Salazar v. Monaco Enterprises, Inc*, 2015 WL 8773279, at *3 (E.D. Wash. Dec. 14, 2015).  "A party may not unilaterally narrow the scope of relevant discovery items based upon its subjective intent to use the item for impeachment purposes." *Id*. at *2.

Plaintiff made the proper discovery request. It should have either been produced, or Amtrak

PLAINTIFF'S MOTION TO EXCLUDE SURVEILLANCE
PHOTOGRAPHS, TAPES AND TESTIMONY AND FOR
DISCOVERY SANCTIONS - 7
Case No. 3:18-cv-05564-BHS

1

should have moved for a protective order, for the Court to decide the issue.

2

       2.    <u>Surveillance Materials are Subject to Disclosure under Rule 26(a)(1)(B)(ii).</u>

3

       Even without the express discovery request present here, Rule 26(a)(1)(B)(ii) requires a

4

party to produce all tangible evidence it "may use to support its claims or defenses, unless the use

5

would be ***solely*** for impeachment." (emphasis added). Rule 26(e) imposes an obligation to

6

supplement Rule 26(a) disclosures "in a timely manner if the disclosure ... is incomplete ... and if

7

the additional ... information has not otherwise been made known to the other parties during the

8

discovery process or in writing." *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 2010 WL 11530557,

9

at *3 (W.D. Wash. Apr. 30, 2010) ("For purposes of determining timeliness …, the beginning time

10

is the date when the facts are discovered, not some nebulous date when counsel first realized that

11

there was some significance to them."). Amtrak knew in August when it conducted the

12

surveillance that its prior response was incomplete and deceptive if not corrected. Yet it did not

13

supplement but allowed the deceptive answer to stand.

14

       In *Derouin v. Kenneth L. Kellar Truck Line, Inc*., the Western District held that defendant

15

violated the laydown provisions of Rule 26(a) by failing to disclose surveillance videotapes,

16

purportedly offered solely for impeachment purposes. The surveillance tapes were relevant to the

17

substantive issue of "the extent of [plaintiff's] injuries." *Id.* at *3. "Where material contains both

18

substantive and impeachment evidence, it is not 'solely for impeachment' and must be disclosed."

19

*Id*. The Court quoted with approval the following language from *Chiasson v. Zapata Gulf Marine*

20

*Corp*., 988 F.2d 513, 517-18 (5th Cir. 1993): "Because the tape is, at the very least in part

21

substantive, it should have been disclosed prior to trial, regardless of its impeachment value. The

22

district court abused its discretion by allowing non-disclosure and admitting the tape into

23

evidence." *Derouin* at *3. In *Chiasson*, the 5th Circuit found that the district court committed

24

PLAINTIFF'S MOTION TO EXCLUDE SURVEILLANCE
PHOTOGRAPHS, TAPES AND TESTIMONY AND FOR
DISCOVERY SANCTIONS - 8
Case No. 3:18-cv-05564-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON 98104
(206) 467-6090

reversible error by admitting videotape surveillance, under the same circumstances present ere.

Other Ninth Circuit courts have held that surveillance tapes of the plaintiff are substantive subject to disclosure, even if offered purportedly solely for impeachment purposes.

"Case law holds that evidence material to the substance of the case—evidence that would tend to prove the truth of a matter to be determined by the jury—must be disclosed even if it could also be considered impeaching with respect to some aspect of a witness's testimony. *Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513, 517-18 (5th Cir. 1993); *see also Klonoski v. Mahlab*, 156 F.3d 255, 269-70 (1th Cir. 1998); *Elion v. Jacks*on, 544 F. Supp. 2d 1, 6-7 (D.D.C. 2008); *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 435 (D. Md. 2006)."

*Norwood v. Children & Youth Servs. Inc.,* 2013 WL 12133879, at *4 (C.D. Cal. Dec. 3, 2013).

Rule 37(c)(1) provides that if a party fails to provide information required by Rule 26(a) or (e), the party is not allowed to use that information at trial unless the failure is substantially justified or harmless.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001).   There is no justification for Amtrak's actions in failing to supplement its discovery response on the surveillance material.  Disclosing this material at the last minute, without the opportunity to conduct discovery or prepare for trial is highly prejudicial, not harmless.

3.   <u>Work Product does not Protect from Disclosure.</u>

 "Where an objection to discovery requests on the basis of the work product doctrine is made, the objecting party must supply a privilege log that details all such documents. The burden of proof lies with the proponent of the privilege and each document must be tested against the adequacy of the party's privilege log and supporting material."  *Point Ruston, LLC v. Pac. Nw. Reg'l Council of United Bhd. of Carpenters & Joiners of Am.*, No. C09-5232BHS, 2010 WL 605563, at *2 (W.D. Wash. Feb. 18, 2010).   FRCP 26(b)(5)(A).   "[B]oilerplate objections are presumptively insufficient" to constitute an appropriate privilege log."   *Ward v. EHW Constructors*, No. C15-5338 BHS, 2016 WL 5415033, at *2 (W.D. Wash. Sept. 28, 2016).

PLAINTIFF'S MOTION TO EXCLUDE SURVEILLANCE
PHOTOGRAPHS, TAPES AND TESTIMONY AND FOR
DISCOVERY SANCTIONS - 9
Case No. 3:18-cv-05564-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

1    Amtrak made a boilerplate work product objection in its initial response.  It did not provide

2 a privilege log, but to the contrary, denied that it had any responsive material.  When it did acquire

3 surveillance material in August, it failed to supplement its response as required by Rule 26(e),

4 provide a privilege log if it intended to assert work product, or to amend its boilerplate work

5 product objection.   Had it timely produced a privilege log reporting the existence of the

6 surveillance tapes, plaintiff could have moved to compel, the Court could have decided any issues,

7 and the parties could have conducted discovery accordingly.  Instead, Amtrak took matters in into

8 its own hands, waiting until the eve of trial before disclosing its "evidence."  Amtrak has failed to

9 preserve any work product objection it might have.

10    In any event, work product does not preclude discovery of surveillance tapes. "[F]ederal

11 and state courts have fairly uniformly held that video surveillance tapes, even if work product,

12 must be provided in discovery and prior to trial." *Papadakis v. CSX Transp., Inc.*, 233 F.R.D. 227,

13 228 (D. Mass. 2006) (and cases cited therein).  Courts ordering the discovery of surveillance videos

14 have done so recognizing that video or film can sometimes be misleading or incomplete, depending

15 on editing or other circumstances. *Papadakis,* 233 F.R.D. at 229.  "[A] truthful plaintiff may well

16 be surprised by the content of a surveillance tape, given the photographer's ability to manipulate

17 surveillance evidence, for example, by filming only the plaintiff's lifting of a heavy bag of

18 groceries, but not the plaintiff's pain-riddled grimace. Thus, truthful plaintiffs, and not just

19 potential perjurers, have a legitimate reason to inquire about the existence of such evidence."

20 *Smith v. Diamond Offshore Drilling, Inc.,* 168 F.R.D. 582, 586 (S.D. Tex. 1996).  Further, "if

21 defendants are not required to disclose the existence of surveillance evidence, plaintiffs will be

22 forced to choose between mitigating their damages by attempting to work and go on with their

23 lives in spite of their injuries, or being ambushed at trial by creatively-edited or otherwise

24

PLAINTIFF'S MOTION TO EXCLUDE SURVEILLANCE
PHOTOGRAPHS, TAPES AND TESTIMONY AND FOR
DISCOVERY SANCTIONS - 10
Case No. 3:18-cv-05564-BHS

manipulated surveillance evidence purporting to show that the plaintiff's injuries are not as severe as claimed." *Id.*

As the lead case cited by Amtrak stated:

> On the other hand, the camera may be an instrument of deception. It can be misused. Distances may be minimized or exaggerated. Lighting, focal lengths, and camera angles all make a difference. Action may be slowed down or speeded up. The editing and splicing of films may change the chronology of events. An emergency situation may be made to appear commonplace. That which has occurred once, can be described as an example of an event which recurs frequently. We are all familiar with Hollywood techniques which involve stuntmen and doubles. Thus, that which purports to be a means to reach the truth may be distorted, misleading, and false.

*Snead v. Am. Exp.-Isbrandtsen Lines, Inc.,* 59 F.R.D. 148, 150 (E.D. Pa. 1973).

Discovery of surveillance films and all their surrounding circumstances is thus essential. *Snead* held that a defendant could depose the plaintiff before disclosing surveillance material. But that is not an issue before the Court here. Amtrak deposed Donnell Linton over five months ago on August 22, 2019. It should have disclosed the surveillance immediately after the deposition, rather than waiting until the eve of trial. Notably, in *Snead* the surveillance issue was raised during discovery, so that the Court could address privilege issues and disclosure issues raised by defendant, and the plaintiff could conduct investigate the surveillance and prepare for trial. Amtrak's tactics here have precluded this outcome.

In its supplemental discovery response, Amtrak makes the following statement: "Amtrak further states that if it did not intend to introduce surveillance evidence at trial, it would not have been required to produce the surveillance photos and films." Leaving aside the erroneous legal assertion regarding production, why the hypothetical "if" as to its intent? Did Amtrak intend to introduce surveillance material or not? When did that intent change so that it now intends to introduce the evidence? Amtrak is purposefully obfuscating.

In fact, Amtrak's position seems to be that so long as it does not presently intend to

PLAINTIFF'S MOTION TO EXCLUDE SURVEILLANCE
PHOTOGRAPHS, TAPES AND TESTIMONY AND FOR
DISCOVERY SANCTIONS - 11
Case No. 3:18-cv-05564-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON 98104
(206) 467-6090

introduce surveillance, it need not disclose it.  When that intention changes, even if it is seven weeks after the close of discovery on the eve of trial, it is perfectly free to waive work product and put it into evidence.  If that is its argument—and it is difficult to see any other—then Amtrak is making a mockery of the orderly discovery process.  If Amtrak believes the discovery rules allow such conduct, then it should be severely sanctioned; otherwise this same conduct will occur in the next case and every case thereafter.

DATED this 3rd day of February, 2020.

LUVERA LAW FIRM

*/s/ Andrew Hoyal*
David M. Beninger, WSBA 18432
Andrew Hoyal, WSBA 21349
Patricia E. Anderson, WSBA 17620
701 Fifth Avenue, Suite 6700
Seattle, WA 98104-7016
Telephone: 206-467-6090
Facsimile: 206-467-6961
Email: david@luveralawfirm.com
        andy@luveralawfirm.com
        patricia@luveralawfirm.com

Attorneys for Plaintiff Linton

***CERTIFICATION:  The above signature certifies pursuant to FRCP 7(d)(4) that plaintiff has in good faith conferred or attempted to confer with defendant.***

PLAINTIFF'S MOTION TO EXCLUDE SURVEILLANCE
PHOTOGRAPHS, TAPES AND TESTIMONY AND FOR
DISCOVERY SANCTIONS - 12
Case No. 3:18-cv-05564-BHS

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

1

2

**CERTIFICATE OF SERVICE**

     I hereby certify that on the below date I electronically filed the foregoing with the Clerk of

3

the Court using the CM/ECF system which will send notification of such filing to the following:

4

Tim D. Wackerbarth  wackerbartht@lanepowell.com

5

Andrew G. Yates yatesa@lanepowell.com

Warren E. Babb, Jr. babbw@lanepowell.com

6

Jeffrey M. Odom odomj@lanepowell.com

Katie Bass bassk@lanepowell.com

7

Lane Powell, PC

8

1420 Fifth Avenue, Suite 4200

PO Box 91302

9

Seattle, WA  98111-9402

Telephone:  206.223.7000

10

Facsimile:  206.223.7107

11

12

     DATED this 3rd day of February, 2020, at Seattle, Washington.

13

                                  */s/ Catherine M. Galfano*

                                    CATHERINE M. GALFANO

14

                                    Paralegal

                                    Luvera Law Firm

15

                                    701 Fifth Avenue, Suite 6700

                                    Seattle, WA  98104-7016

16

                                    Telephone: 206.467.6090

                                    Facsimile: 206.467.6961

17

                                    catherine@luveralawfirm.com

18

19

20

21

22

23

24

PLAINTIFF'S MOTION TO EXCLUDE SURVEILLANCE
PHOTOGRAPHS, TAPES AND TESTIMONY AND FOR
DISCOVERY SANCTIONS - 13
Case No. 3:18-cv-05564-BHS